E. J. FRIEDE, RECEIVER SOUTHERN MINNESOTA JOINT
STOCK LAND BANK OF MINNEAPOLIS, v.
STEPHEN POOL AND ANOTHER.[1]

May 5, 1944.

No. 33,724.

L. P. Johnson, for appellants.

Hall, Catlin & Gold, William L. Prosser, and Dorsey, Colman, Barker, Scott & Barber, for respondent.

STREISSGUTH, JUSTICE.

Default having occurred in the payment of the last installment due under a contract for deed, plaintiff, as vendor, brought this suit in equity demanding judgment "adjudging the amount due plaintiff from defendants under said contract, and fixing a day at or before which defendants shall pay the same, and in default of such payment that said contract be forfeited and cancelled, and

[1] Reported in 14 N. W. (2d) 454.

the plaintiff have restitution of said premises." The defense was that the plaintiff was unable to perform because of the fact that a narrow strip of land on the north line of the premises involved was in the adverse possession of a third party.

The contract for deed was entered into on October 6, 1934. By its terms, plaintiff agreed to convey to the defendant Stephen Pool[2] certain real estate in Lyon county described as: "The West Half of the Northeast Quarter (W½ NE¼) and the East Half of the Northwest Quarter (E½ NW¼) of Section Ten (10), Township One Hundred Nine (109), Range Forty-one (41), containing one hundred sixty (160) acres, more or less, according to the United States Government survey thereof." The purchase price was fixed at $5,600, or $35 per acre, of which $100 was paid at the time of the execution of the contract, $800 on October 10, 1934, $100 on March 1, 1936, and $200 on the first of March of each year thereafter up to and including 1941. The balance of $3,600 was payable on or before March 1, 1942. Defendant went into possession on March 1, 1935, and so continued at all times thereafter.

According to the government survey, the tracts described in the contract contained 80 acres each. The plaintiff, however, was unable to deliver a good title to the entire 160 acres because of the fact that an adjoining owner, Vernon Towne, owning the SE¼ and the E½ of the SW¼ of section three in the same township, claimed title to a strip of land 1.8 acres in area on the north line of the premises conveyed. This strip varied in width from 19¾ feet at the northwest corner of the land to be conveyed to 34 feet at its northeast corner. The trial court found that the occupation and adverse claim of ownership of this small tract by Towne constituted "an encroachment upon the lands to be conveyed to the defendant by the plaintiff, but that the said tract * * * is composed of rough land cut up by a creek or riverbed, so the encroachment is of a

[2]Alma Pool, wife of Stephen, is not a party to the contract for deed but is joined as a party defendant. To avoid confusion, we shall refer only to the defendant Stephen Pool.

minor degree and can be compensated for by the reduction of the amount to be paid by the defendant."

The court allowed $150 as compensation to defendant for the inability of plaintiff to deliver good title to the strip of 1.8 acres and found that the balance due plaintiff from defendant was $3,450. It accordingly ordered judgment that, upon payment by defendant of the sum of $3,450, with interest, plaintiff deliver to defendant a receiver's deed of said real estate free and clear of all encumbrances. It further ordered judgment that unless, on or before 60 days after service of the order for judgment upon counsel for defendant, the defendant pay to plaintiff the sum of $3,450, with interest and costs, the contract for deed be cancelled and all right, title, and interest of defendant in the land and property described in the contract be forfeited and annulled. Judgment was entered on the findings so made on October 12, 1943.

Defendant failed to make any further payments on the contract, and, after the expiration of 60 days from the court's order, plaintiff made a motion for a further order directing the entry of final judgment cancelling the contract and adjudging that plaintiff was the owner and entitled to possession of the lands described in the contract. The motion having been granted, final judgment was entered on October 26, 1943. The appeal is from both judgments.

Plaintiff admits his inability to give good and marketable title to the 1.8 acres of land in the adverse possession of Towne, but asserts that the deficiency in acreage is a minor and immaterial one within the rule of Restatement, Contracts, § 375, as follows:

"Specific enforcement may properly be decreed, in spite of a minor breach or innocent misrepresentation by the plaintiff, involving no substantial failure of the exchange for the performance to be compelled."

Specific performance with compensation for deficiencies is a common remedy and a valuable one. The principle of compensation is applied freely in cases where a purchaser asks specific performance against his vendor, and not infrequently, though more cautiously, in suits by a vendor against an unwilling purchaser. Van Blarcom

v. Hopkins, 63 N. J. Eq. 466, 471, 52 A. 147, 148, 149. A court of equity, in either case, looks at the substance and not merely the letter of the contract, and "when the agreement can be substantially, though not literally, carried out, without changing the nature of the contract or substituting a new one," and justice done between the parties, it will be so enforced. The doctrine of compensation rests upon this principle. C. M. & St. P. Ry. Co. v. Durant, 44 Minn. 361, 366, 46 N. W. 676, 678; cf. 49 Am. Jur., Specific Performance, § 107; Note, 81 A. L. R. 901. Where, as here, the failure of the vendor's title is to some portion of the land less than the whole, the rule of substantial performance applies. Note, 57 A. L. R. 1508. Specific performance will accordingly be granted to a vendor, with abatement in the purchase price or other adequate compensation to the purchaser, if there is only a slight and unsubstantial deficiency in quantity of the land to be conveyed or the land is subject to a slight or trivial encroachment which does not materially affect the value or enjoyment of that which can be conveyed. 49 Am. Jur., Specific Performance, § 107; Notes: 6 Eng. R. C. 668; 9 Minn. L. Rev. 585; 52 L.R.A.(N.S.) 959; 57 A. L. R. 1508.

This is a proper case for the application of these rules unless a distinction must be made because of the special circumstances called to our attention by the defendant. He claims, first, that the rule permitting compensation applies only where the deficiency in quantity is due to a mistake in the survey, and not where, as here, the governmental subdivisions referred to in describing the premises contain the full acreage stated in the contract, and the inability to perform results from the fact that a third person claims title by adverse possession or otherwise to a part of the tract. No such distinction is recognized in the cases. The rule of compensation for minor deficiencies has been applied repeatedly to cases where a vendor's title to a small part of the entire acreage is defective (Notes: 52 L.R.A.[N.S.] 959, 960; 81 A. L. R. 905), including cases of minor encroachments by third persons upon the land to be conveyed. 66 C. J., Vendor and Purchaser, § 635; Note, 57 A. L. R. 1444; Herring v. Esposito, 94 N. J. Eq. 348, 119 A. 765; Morgan's

Admr. v. Brast, 34 W. Va. 332, 12 S. E. 710; Farris v. Hughes, 89 Va. 930, 17 S. E. 518.

Secondly, defendant, admitting that the 1.8 acres in the disputed strip is of little or no value as farming land, insists that the conveyance thereof to him is most important because without it he has no access to the north line of section three or to any highway established on that line. This presents a new aspect affecting plaintiff's right to specific performance with compensation, to wit: the importance of the 1.8-acre strip to the enjoyment and use of the remainder of the farm, irrespective of the size of the strip or its value for farming purposes.

"* * * It is obvious that there may be cases where as to quantity the shortage, considered in connection with the whole, would not be substantial, and yet the inability of the vendee to secure the portion the vendor is' unable to convey would so seriously interfere with his use and enjoyment of the land the vendor was able to convey as to make the shortage very substantial." Annotation, 81 A. L. R. 904.

Is this a case of the character referred to?

At the time the contract for deed was made, the only access to the 160-acre farm was by an old cartway crossing the NE¼ of the. NE¼ of section 10 owned by Earl Mitcheltree. This cartway apparently had been established by user; its width is not disclosed. The fact that it afforded the only access to the farm affected its loan value to such an extent that several loan companies refused to make defendant a loan to pay off the balance of the purchase price of the farm. Quoting from plaintiff's own testimony: "We had various talks about his [defendant's] making some arrangements to take care of the deal, and he [defendant] said he could not get a loan on the farm because there was no legal right of way to the farm. I knew that to be a fact because several loan companies had turned down applications similar to that."

Accordingly, in 1940, defendant petitioned the town board for a four-rod road to be established on the north. line of the NE¼ of the NE¼ of section 10, between the lands of Mitcheltree and Towne.

The new road was duly established on this line by town order dated May 9, 1940. The order also purported to vacate the existing cartway across the Mitcheltree land which defendant had formerly used as his sole outlet to the public highway on the east section line. No damages were allowed to Mitcheltree on account of the two-rod strip across his lands condemned for the new highway, the benefits from the vacation of the old cartway being considered to offset the value. of his land condemned for the new road. Vernon and Anna Towne, as owners of the E½ of the SE¼ of section three, likewise, were allowed no damages by the town for a two-rod strip of their land condemned for the new highway, but the award of damages recites that they were paid $30 by defendant. The award contains the further provision that "Stephen Pool is to build forty rods of fence on the line when it is established by the county surveyor for said Vern Town [sic] and to furnish material and build as per agreement at the time of meeting," and also recites that "Stephen Pool also agrees to furnish material and build forty rods of fence for Earl Mitcheltree."

When it came to constructing the road, however, the section line was not followed. Instead, the center of the road was located on a diagonal from the northeast corner of section 10 southwesterly to a point about 33 feet south of the northeast corner of the Pool land. The west terminus of the road as constructed coincided approximately with the east terminus of the fence between the Towne and Pool lands. The result, at the west end of the new highway, was that two rods of the new four-rod road as constructed were south of the fence and outside the limits fixed by the order establishing the road. If the location of the road as actually built can be held, then defendant is afforded an outlet from the lands he purchased to the public road on the east section line, though only two rods of the new road's width at its west terminus will abut upon his land.

Defendant claims that, because the road order fixes the west terminus on the section line, the road cannot, over the objection of Mitcheltree or any other interested person, be held in the location

where it was actually constructed. Defendant's premise in this connection is correct, for the petition and order for the establishment of the new road called for a four-rod road, on the section line, and the town board in constructing the road on the bias clearly trespassed upon the Mitcheltree lands. Short of the six-year period fixed by statute for the establishment of roads by user (Minn. St. 1941, § 160.19 [Mason St. 1927, § 2590]), neither the public nor defendant would have any right to use that portion of the new road which was constructed outside the four-rod limit fixed in the road order.

The fact that in 1938 defendant moved the fence in dispute to the section line, where he maintained it for more than a year and a half and until Towne threatened trouble, rather than showing a waiver of the encroachment by Towne, establishes that defendant considered his possession to the section line valuable for road connection purposes. By requiring defendant to accept compensation for the inability of plaintiff to deliver good title to the disputed strip, the trial court deprived him of more than the use and ownership of 1.8 acres of comparatively worthless land; it took from him all legal access to any four-rod road which theretofore had been or thereafter might be established or constructed on the section line. If defendant had accepted the conditions imposed by the judgment, he would have been without legal means of ingress to or egress from the land he purchased. Mitcheltree could at any time insist that the highway as laid out was on the section line and that defendant was trespassing on his land in using the new highway outside of the four-rod limit fixed in the road order.

If the road had been constructed on the section line in accordance with the road petition and order, defendant would have no access from the farm he purchased to the new road without crossing the disputed strip of land. His good faith in seeking the establishment of this section-line road cannot seriously be questioned. He quite apparently was motivated by the fact that the old cartway was his only means of ingress to and egress from his farm, and that loan companies had refused loans to him because of that fact.

It is a matter of common knowledge that, except under special circumstances, newly established roads and cartways in rural areas are, wherever practicable, located on section or subsection lines and on the line between the lands of adjoining owners rather than across the lands of one of them. This is the plan proposed by defendant, at some expense of money and labor to himself. Yet, after it was accomplished, defendant had no access to the new road as established without crossing the strip which Towne had fenced in under claim of ownership.

In the early chancery practice, the courts were quite liberal in waiving strict compliance with his contract by a vendor seeking specific performance against a reluctant purchaser. Fry, Specific Performance, § 1217. Of recent years, however, the trend has definitely been to the contrary, especially in cases involving more than mere shortage in area. As said by a recent commentator:

"* * * Equity grows increasingly hesitant to grant relief the further the nature of the defect departs from absence of a quantum of the subject matter. This distinction between quantity and other types of defect seems to bear out what has been said above: in cases involving quantity, more than anywhere else, the court regards itself as ordering the defendant to render part performance, rather than forcing him to give something different in partial substitution. When the defect consists in something other than quantity or quality of the *res,* the hesitancy hardens into refusal." 40 Harv. L. Rev. 478.

Under the modern rule, specific performance will generally not be decreed in favor of a vendor who is himself in default at the time when performance is due and who by his default deprives the purchaser of a substantial benefit under his contract. 49 Am. Jur., Specific Performance, § 40.

Pomeroy, in his treatise on Specific Performance of Contracts (3 ed.) § 450, states the doctrine as follows:

"* * * In respect of the right to enforce a partial performance upon his adversary, the vendor does not possess the power of elec-

tion which equity confers upon the vendee. Two rules are equally well settled by courts of equity. If the vendor's failure to comply with the terms of the contract, either with respect to a defective title or a deficiency in the subject-matter, is not material, but is rather formal in its nature, so that the purchaser will get *substantially* what he contracted for, then the vendor can obtain a decree for a specific performance with compensation, even against an unwilling vendee. If, however, the inability of the vendor to fulfill on his part affects a material part of the contract, if the defect in his title or the deficiency in the subject-matter is substantial, and not merely a failure to literally comply with the exact terms of the agreement—in short, if the vendee will not get substantially what he contracted for, then the vendor will not be permitted to enforce such a partial performance, even with compensation upon an unwilling purchaser."

And, see, Pomeroy, Equity Jurisprudence (5 ed.) § 1407. Other authorities are all to the same effect. If the deficiency in quantity, though relatively small, is essential or material to the possession and enjoyment of the land the vendor is in a position to convey, the vendor is uniformly denied specific performance against an unwilling purchaser. Pomeroy, Specific Performance of Contracts (3 ed.) § 453; 49 Am. Jur., Specific Performance, §§ 107, 108; Williston, Contracts, § 844; Notes: 81 A. L. R. 901, 904; 57 A. L. R. 1509; 52 L.R.A.(N.S.) 959; 10 Ann. Cas. 562; 9 Minn. L. Rev. 585; Knatchbull v. Grueber, 6 Eng. R. C. 668, 675, and note; Van Blarcom v. Hopkins, 63 N. J. Eq. 466, 52 A. 147.

There is always difficulty in applying the doctrine of compensation to a reluctant purchaser. There can be no uniform standard by which to ascertain what is essential to him. As pointed out in Knatchbull v. Grueber, 6 Eng. R. C. 676, *supra:*

"* * * What is desirable to one is not so to another. One wants a wood for game, another desires it only as a beautiful object; one looks only to agriculture, another dislikes tithes; it therefore seems a little arbitrary to insist on a party taking compensation. Why am I bound to take what I did not mean to buy? You say you will

give me compensation; but who is to judge of the compensation? Can you be sure it is a compensation?"

Here, in view of the obvious advantage to the farm of a section-line road and the admitted effect of the absence of such road upon the loan value of the farm, no court should compel defendant against his wishes to accept compensation for the 1.8-acre strip adversely held by Towne where loss of such strip will deprive defendant of a valuable outlet to his farm which would be his if he got all that he bargained for.

"Vendors ought always to examine their title before they bring their estate to market." Knatchbull v. Grueber, 6 Eng. R. C. 679, *supra*. If their title is in fact encumbered by an easement or their land encroached upon, the duty to remove such encumbrance or encroachment should rest on them and not on their purchasers. Knudson v. Trebesch, 152 Minn. 6, 187 N. W. 613. So, here, the duty to test the validity of the adverse claim of Towne should rest upon plaintiff and should not be cast upon defendant. Because of the importance to him of having title to the disputed strip, he should not be compelled to accept title to the balance of the land purchased, even though he be compensated liberally on the basis of the naked value of the strip for farm purposes only. We conclude that this is not a proper case for application of the rule of compensation.

Reversed.